IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIGHAM YOUNG UNIVERSITY, a Utah Non-Profit Education Institution;  DR. DANIEL L. SIMMONS, an individual,, <br><br> Plaintiffs, <br> v. <br><br> PFIZER, INC., a Delaware Corporation, G.D. SEARLE & COMPANY, a Delaware Corporation, G.D. SEARLE LLC, a Delaware Limited Liability Company, MONSANTO COMPANY, a Delaware Corporation, and PHARMACIA CORPORATION, a Delaware Corporation, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO QUASH <br><br> Case No. 2:12-mc-143 TS BCW <br> Transferred from USDC Western Dist of OK 5:12-cv-041 <br><br> District Judge Ted Stewart <br><br><br> Magistrate Judge Brooke Wells |

Before the Court is Plaintiffs Brigham Young University and Dr. Daniel Simmons

(collectively "BYU") Motion to Quash.[1]  BYU moves to quash

> the Defendants Pfizer, Inc., G.D. Searle & Company, G.D. Searle LLC, Monsanto Company, and Pharmacia Corporation's (collectively "Pfizer") (1) Subpoena to Testify at a Deposition in a Civil Action; and (2) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action served on third-party DNA Solutions, Inc. ("DNA Solutions"), an Oklahoma corporation.[2]

As set forth below the Court DENIES BYU's Motion to Quash.[3]

---

[1] Docket no. 9.

[2] Mtn. p. 4-5.

[3] Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda.  *See* DUCivR 7-1(f) (2011).  Plaintiffs filed their memorandum in support of the motion on February 2, 2012.  Defendants filed an opposition on February 22, 2012.  And, as of the date of the Court's decision, Plaintiffs have chosen to not file any reply, which under the Local Rules is optional.  *See* DUCivR 7-1(b)(4)(B) ("A reply memorandum to such opposing memorandum may be filed at the discretion of the movant within fourteen (14) days after service of the memorandum opposing the motion.").

BACKGROUND

This is an ancillary dispute concerning subpoenas issued to DNA Solutions.[4]  The underlying matter centers on Plaintiffs and Defendants Pfizer Inc., G.D. Searle & Company, G.D. Searle LLC, Monsanto Company, and Pharmacia Corporation's (collectively "Pfizer") involvement in the discovery and development of COX-2 selective drugs.  BYU alleges that Dr. Simmons, a BYU professor, discovered COX-2 and this led to the pharmacology community understanding the difference between the COX-1 enzyme and the COX-2 enzyme.  Prior to this discovery, Non-steroidal anti-inflammatory drugs or NSAIDs, were used to treat pain, inflammation and fever, but they also had undesirable sides effects.  NSAIDs hurt the beneficial effects of mucus secretion in the stomach, which led to potentially harmful NSAID-induced ulcers.  The advent of COX-2 selective NSAID drugs alleviated this negative side effect.

BYU asserts that Dr. Simmons brought his discovery to Monsanto and entered into a research agreement.[5]  Under this agreement the parties sought to collaborate in an attempt to develop a drug based on the COX-2 discovery.  The parties worked together under the Agreement for approximately one year before Monsanto cancelled the Agreement.  BYU asserts that Monsanto wrongfully cancelled the Agreement in order to misappropriate Dr. Simmons' research.  Monsanto then allegedly used this misappropriated research to develop and patent a COX-2 selective NSAID without having to share any proceeds with BYU.  In its Complaint,

---

[4] *See* subpoenas attached as exhibits 8 and 9 to the file received from the Western District of Oklahoma.

[5] As noted by BYU in its Complaint, Monsanto acquired Searle Co. in 1985, making Searle Co. its pharmaceutical unit.  In approximately 1998 Monsanto and Pfizer entered into a joint venture to market Celebrex a COX-2 selective NSAID.  In April 2000, Monsanto/Searle merged with Pharmacia & Upjohn, Inc. to form Pharmacia.  In 2003, Pharmacia merged with Pfizer, leaving Pfizer in control of Pharmacia and Searle.  BYU and Monsanto were the original parties to the Research Agreement but Pfizer is the current entity with interest in the creation of COX-2 drugs.  For ease of reference, the Court refers to the Defendants collectively as Pfizer except where it is necessary to distinguish between the entities.

BYU has alleged a breach of various provisions in the Research Agreement as well as fraud, unjust enrichment, and misappropriation of trade secrets.

Since the original Complaint was filed in this action, the parties have conducted extensive fact and expert discovery.  On January 5th and February 7th of 2011, BYU designated Dr. Brandt Cassidy and Dr. Craig Shimasaki of DNA Solutions as testifying experts.  On February 9th and 10th, Drs. Cassidy and Shimasaki collected 300 COX-2 biological samples from Pfizer's storage facility in Lancaster Pennsylvania.  The purpose of collecting these samples was to try and determine where Pfizer obtained the COX-2 clones that were used to develop its COX-2 selective NSAIDs.  In short, BYU asserts that the COX-2 clones came from Dr. Simmons.  On the other hand, Pfizer argues they came from Dr. Harvey Hershman at UCLA alleging that BYU's clones did not work.

On February 18, 2011, BYU served an expert report from DNA Solutions outlining its analysis and findings.  This report was amended on June 22, 2011 and a supplemental expert report with additional data comparing BYU's and Pfizer's biological samples was also submitted.  Each of these reports lists Drs. Cassidy and Shimasaki as retained independent consultants who are offering expert opinions.  Other experts, including Dr. Prescott from BYU and Dr. Mancini from Pfizer, have filed reports expressly relying on DNA Solutions' reports and analysis.

On August 4, 2011, ten days after the deadline for submission of Pfizer's expert reports, BYU sent a letter notifying Pfizer that it was withdrawing DNA Solutions and its personnel as testifying experts in this action.[6]  The letter also stated that BYU would not use DNA Solutions as an expert witness at trial and would not rely on their expert reports.  To that end, BYU

---

[6] *See* Letter dated August 4, 2011 from L. Richard Williams to Richard Malloy, attached as Ex. 4 to the file received from the Western District of Oklahoma.

withdrew those portions of Dr. Prescott's report that relied on the expert reports from DNA Solutions.

On August 12, 2011, Pfizer requested deposition dates for all of BYU's experts including Drs. Shimasaki and Cassidy of DAN Solutions.  On October 3, 2011, this Court held a status conference concerning discovery.  At the hearing, the Court discussed a number of matters, including Pfizer's request to serve subpoenas on DNA Solutions.  In a written ruling following the hearing, the Court entered no ruling on Pfizer's request preferring that it be handled by the Court issuing the subpoenas.  Pfizer issued the subpoenas out of the Western District of Oklahoma and that court then transferred the matter back to Utah.  "The subpoenas to DNA Solutions request testimony from representatives of DNA Solutions and documents supporting DNA Solutions reports issued in this matter, namely the identifying information for the biological samples and the data generated from DNA Solutions analysis."[7]

DISCUSSION

The Federal Rules of Civil Procedure draw a distinction between different types of experts and the discovery that is allowed from those experts.[8]  Rule 26(b)(4)(A) provides that

---

[7] Op p. vii.

[8] For example, the Tenth Circuit Court of Appeals in *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496 (1980), considered the Federal Rules and adopted the four classifications of experts from commentators Wright and Miller:

(1) Experts a party expects to use at trial.  The opponent may learn by interrogatories the names of these trial witnesses and the substance of their testimony but further discovery concerning them can be had only on motion and court order.

(2) Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial.  Except as provided in rule 35 for an examining physician, the facts and opinions of experts in this category can be discovered only on a showing of exceptional circumstances.

(3) Experts informally consulted in preparation for trial but not retained.  No discovery may be had of the names or views of experts in this category.

(4) Experts whose information was not acquired in preparation for trial.  This class, which includes both regular employees of a party not specially employed on the case and also experts who were actors or viewers of the occurrences that gave rise to the suit, is not included within

"[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."[9]  In contrast, Rule 26(b)(4)(D) provides that

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.  But a party may do so only:
> . . . .
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.[10]

Thus, whether or not an expert may be deposed or questioned via interrogatories often turns in part on whether the expert is designated as testifying or non-testifying.  This distinction is based on sound policy considerations such as:

> (1) encouraging counsel to obtain necessary expert advice without fear that the adversary may obtain such information; (2) preventing unfairness that would result from allowing an opposing party to reap the benefits from another party's efforts and expense; (3) preventing a chilling effect on experts serving as consultants if their testimony could be compelled; and (4) preventing prejudice to the retaining party if the opposing party were allowed to call at trial an expert who provided an unfavorable opinion to the party who first retained them.[11]

BYU asserts that because DNA Solutions has now been designated as a non-testifying expert Pfizer is precluded from seeking discovery from DNA Solutions unless Pfizer can show "exceptional circumstances."  BYU cites to *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*[12] in support of this argument.

In *Callaway*, a discovery dispute arose when the plaintiff informed the defendant that it was withdrawing a testifying expert and replacing it with another.  The expert was withdrawn as

---

Rule 26(b)(4) at all and facts and opinions they have are freely discoverable as with any ordinary witness.  [Footnotes omitted].

Wright & Miller, Federal Practice and Procedure: Civil § 2029[.]

[9] Fed. R. Civ. P. 26(b)(4)(A).

[10] *Id* 26(b)(4)(D).

[11] Mem. in sup. p. 8 (citing to *Plymovent Corp. v. Air Tech. Solutions, Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007)).

[12] 2002 WL 1906628 (D. Del. Aug. 14, 2002).

a testifying expert after his deposition was scheduled and after his expert report had been

provided to the opposing party, but before the actual deposition took place.[13]  After considering a

number of other cases addressing this issue the court stated:

> A common theme is apparent throughout the cases reviewed from various
> jurisdictions – the conversion of an expert designated for trial purposes under
> Rule 26(b)(4)(A), to a consulting expert, under Rule 26(b)(4)(B) is allowed and
> results in insulating that expert from discovery, absent the showing of exceptional
> circumstances.[14]

The court went on to reject the defendant's assertions of prejudice and held that the defendant

was not entitled to depose the redesignated expert absent exceptional circumstances.[15]

BYU asserts this case is analogous to *Callaway*.  "BYU withdrew DNA Solutions as a

testifying expert after the expert reports had been provided to Pfizer and before Pfizer proposed

to take the deposition of DNA Solutions."[16]  Thus, absent a showing of exceptional

circumstances, this Court should preclude discovery from Pfizer.  BYU further asserts that Pfizer

cannot meet this showing because it could have tested the biological samples in BYU's

possession or its own samples, including those tested by DNA Solutions.

The Court disagrees and finds *Callaway* readily distinguishable from the instant matter.

In *Callaway*, the plaintiff withdrew one expert to substitute it with another to provide testimony

on the same subject matter.  Defendant had not relied upon the withdrawn expert and had

---

[13] *Id.* at *1.

[14] *Id.* at *3; *see also In re Shell Oil Refinery*, 132 F.R.D. 437, 440-41 (E.D. La. 1990) (refusing expert discovery
where a party changed the designation of its expert from testifying to non-testifying after that expert had been
deposed and where there were no exceptional circumstances); *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023,
1042, 1046-47 (E.D. Cal. 2002) (granting motion to quash subpoenas of settling defendants' experts even though
expert reports had been exchanged and where the movant did not show that the experts had unique expertise
otherwise unavailable by other experts in the field).

[15] *Id.* at *4.

[16] Mem. in Supp. p. 7.

designated another expert of its own.  Moreover, there is nothing indicating that the withdrawal

of this expert by the plaintiff occurred after the deadline to designate experts as in this case.[17]

       In contrast to BYU's position, Pfizer argues the "exceptional circumstances" test is

inapplicable here because "DNA Solutions was designated, performed services, and disclosed

their analyses as a testifying expert."[18]  Instead, Pfizer suggests the Court should apply a

balancing standard under Federal Rule of Evidence 403.[19]  In support Pfizer cites to *House v.*

*Combined Ins. Co. of America*[20] and *Guinn v. CRST Van Expedited, Inc.*[21]

       In *House*, the defendant filed a motion in limine seeking to prevent the plaintiff from

calling an expert witness designated by the defendant as expected to be called at trial, but later

withdrawn.  The expert had performed a medical examination of the plaintiff and generated a

report.[22]  After the expert's report was completed and given to the plaintiff, defendant then

sought to withdraw the testifying designation.[23]  The court reviewed the differing tests applied in

addressing the question of "whether a party should have access to and be able to use at trial an

expert hired by the opposing party?"[24]  After doing so, the court adopted a balancing test under

Rule 403 and allowed the plaintiff to depose the expert and use the testimony at trial.[25]  In

---

[17] The Court also finds BYU's argument that the discovery sought violates the scheduling order unpersuasive because BYU itself contributed to the delay and inconvenience of having to obtain discovery from DNA Solutions after the deadlines in the scheduling order.

[18] Op. p. 1.

[19] Fed. R. Evid. 403.

[20] 168 F.R.D. 236 (N.D. Iowa 1996).

[21] 2011 WL 2414393 (W.D. Okla. June 10, 2011) (unpublished opinion).

[22] 168 F.R.D. at 238-39.

[23] *Id.*

[24] *Id.* at 240.

[25] *Id.* at 248-49.

reaching its decision the court noted the importance of a party's choice in designating an expert.
The court stated:

> "[t]his court is persuaded that whether the witness has been designated as an
> expert expected to testify at trial pursuant to Fed.R.Civ.P. 26(b)(4)(A) is a very
> significant difference from the situation in which an expert has merely been
> consulted by a party, but never designated as likely to testify at trial."[26]

In *Guinn*, the Oklahoma District Court also applied a balancing test to circumstances
somewhat similar to those found here. The plaintiff withdrew the designation of her expert after
the expert had prepared a report, been deposed, and after the deadline to designate experts had
passed.[27] By this time the defendant had chosen to not designate its own expert, but instead, had
chosen to rely upon the availability of plaintiff's expert for trial.[28] The court noted its discretion
in determining the question,[29] and allowed the defendant to utilize the testimony of plaintiff's
expert.

Turning to the instant matter, the Court finds the reasoning of the courts in *House* and
*Guinn* persuasive. BYU originally designated DNA Solutions as a testifying expert. DNA
Solutions performed work under that designation and issued three reports that were relied upon
by both BYU and Pfizer. After the deadline to designate experts had passed, then BYU
withdrew their designation and sought to transform DNA Solutions into a consulting expert
under Rule 26(b)(4)(D). As stated by the court in *House*, this Court is persuaded that once a
party designates an expert, "the party will have to live with the consequence that the opposing
party will likely be given the opportunity to depose the expert or even to call the expert at trial on

---

[26] *Id.* at 245.

[27] 2011 WL 2414393 *2.

[28] *Id.* at *3.

[29] *See Archer v. Grynberg*, 1991 WL 268808 *10th Cir. Dec. 12, 1991) (unpublished opinion).

their own behalf."[30]  This is especially compelling in a case such as this, where the expert has issued reports, those reports have been relied upon by the opposing party, and then that expert's designation is changed after the deadline to disclose experts has passed.

Rule 26(b)(4)(D) acts a shield permitting parties to prepare for trial by consulting with whomever they choose without fear of the opposing party discovering that preparation.  It has similar interests to those found in the work product doctrine, which also protects matters prepared in anticipation of litigation.  But, Plaintiff's suggested use of the Rule in this case could turn the Rule into a sword—allowing a party to designate an expert as testifying and then after obtaining an unfavorable opinion, simply reclassifying that expert as non-testifying to the detriment of the opposing side to avoid any negative consequences.  In addition, BYU's suggested use of Rule 26(b)(4)(D) potentially undermines the Court's interest in the proper resolution of issues.[31]

Accordingly, Plaintiffs' designation of DNA Solutions as a testifying expert—when that designation was withdrawn at such a late time in the case and after expert reports were issued— removes the question of whether that expert should be able to be deposed and used at trial from the exceptional circumstances requirement found in Rule 26(b)(4)(B).  Instead, the court looks to the balancing test of probative value versus prejudice articulated in Rule 403.[32]  After conducting this balance of interests, the Court overrules Plaintiffs' objection to the subpoenas issued by Defendants to DNA Solutions.  Defendants, however, are cautioned against eliciting and using

---

[30] *House*, 16 F.R.D. at 247.

[31] *Rubel v. Eli Lilly and Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995) (identifying the court's interest as "an informed resolution of plaintiff's claim"); *Crowe v. Nivison*, 145 F.R.D. 657, 658 (D.Md. 1993) (identifying the court's interest and that of society as a whole as "arriving at the truth of the matter").

[32] Fed. R. Ev. 403.

testimony at trial regarding the fact that DNA Solutions was originally hired and then dropped by

Plaintiffs.  Such testimony is potentially very prejudicial and may confuse a jury.[33]

ORDER

For the reasons set forth above, Plaintiffs' Motion to Quash is DENIED.

DATED this 23 March 2012.

_____
Brooke C. Wells
United States Magistrate Judge

---

[33] *House*, 168 F.R.D. at 249; *Peterson v. Willie*, 81 F.3d 1033, 1037 (11th Cir. 1996) (recognizing the prejudice that results from informing the jury that an expert had originally been consulted by the opposing party).